IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELI BARROLLE ET AL.              :
                                 :        CIVIL ACTION
         v.                      :
                                 :        NO. 11-4518
THE LIBERIAN SPORTS ASSOCIATION  :
OF PENNSYLVANIA ET AL.           :

**SURRICK, J.**                                    **JULY 22, 2011**

<u>**MEMORANDUM**</u>

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction and Restraining Order.  (ECF No. 2.)  For the following reasons, the Motion will be denied.

**I.       BACKGROUND**

On July 18, 2011, Plaintiffs contemporaneously filed a Complaint and Motion for Preliminary Injunction and Restraining Order.  At the request of counsel, we held a hearing on July 21, 2011.  The following evidence and testimony was presented.

Plaintiff Eli Barrolle is the holder of a United States trademark for "Barrolle Sports Association," which was registered on August 23, 2005.  (Compl. Ex. A, ECF No. 1.)  Plaintiff Union of Invincible Eleven & Majestic Sports Association is the holder of a United States trademark for "Invincible Eleven," registered on May 23, 2006.  (*Id.* Ex. D.)  Barrolle Sports Association sponsors a sporting event each year to commemorate Liberia's independence day.  This year it has scheduled a soccer game between Mighty Barrolle and Invincible Eleven for July 23, 2011, at Bensalem High School.  (*Id.* Ex. B.)

Defendants Liberian Sports Association of Pennsylvania, Mighty Barrolle Sports Association of Trenton, Trenton Professional Old Timer Association, Herbert Cooper, D. Zeogar

Wilson, Sandra Barrolle, Kula Blidi, and John Moore are also hosting a soccer game to commemorate Liberia's independence day.  The game is between teams with the names Mighty Barrolle and Invincible Eleven and it is scheduled for July 23, 2011, at Olney High School, which is approximately ten miles away from Bensalem High School.  (*Id.* Ex. E.)  Plaintiffs allege that Defendants are infringing their common-law trademarks and federally-registered trademarks in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*  Plaintiffs seek to enjoin Defendants' soccer game.

At the hearing on July 21, 2011, the Court heard testimony from Emmett Trinity, co-chairman of the Union of Invincible Eleven; Eli Barrolle, president of Barrolle Sports Association; Herbert Cooper, chairman of the Liberian Sports Association of Pennsylvania; and D. Zeogar Wilson, former president of the Mighty Barrolle Sports Association of Trenton.  (*See* Hr'g Tr.)

Testifying on behalf of Plaintiffs, Trinity indicated that the Union of Invincible Eleven was conceived in 1996 and its constitution and bylaws were promulgated thereafter.  (Hr'g Tr. 5-7 & Ex. P-1.)  Trinity described the fierce and passionate rivalry between the Mighty Barrolle and Invincible Eleven.  He advised that Plaintiffs have used flyers, the internet, listserves, and radio to advertise the game.  Plaintiffs expect to incur more than 5,000 dollars in game-related expenses.  (*Id.* at 8.)  Tickets for admission are ten dollars.  Trinity predicts that there will be between 6,000 and 7,000 people in attendance if the game at Olney High School is canceled, and between 3,000 and 4,000 if it is not.  (*Id.* at 13.)  In addition to diverting fans, Trinity testified that the game at Olney will confuse the public, harm the integrity of the game, and dilute the value of Plaintiffs' independence day festivities.

2

Barrolle testified that Mighty Barrolle was founded in Liberia in 1954 and was named after his father.  He maintained that since 1982, the Barrolle Sports Association has used various names in America, including Mighty Barrolle and Union of Mighty Barrolle.  (*Id.* at 19.)  There are currently six chapters of the Association.  Barrolle testified that the Mighty Barrolle and Invincible Eleven have played soccer games from at least 2000 through 2010.  (*Id.* at 28-29.)  He advised that the individuals listed as Defendants used to be members of his organization, but left and formed a new entity in 2007.

The games in 2009 and 2010 were the subject of similar litigation.  On July 22, 2009, Union of Invincible Eleven (Plaintiffs herein) filed a complaint and motion for preliminary injunction in the United States District Court for the District of New Jersey, which sought to prevent Mighty Barrolle Invincible Eleven Sports Association of Liberians in North Jersey from hosting an independence day soccer game on July 25, 2009.  *See Union of Invincible Eleven & Majestic Sports Ass'n, Inc. v. Mighty Barrolle Invincible Eleven Sports Ass'n of Liberians in N.J., Inc.*, No. 09-3603 (D.N.J. July 22, 2009).  On July 24, 2009, Judge Greenaway granted the plaintiffs' request for a temporary restraining order and enjoined defendants from playing their soccer game on July 25, 2009.  On July 22, 2010, Plaintiffs herein filed another complaint and motion for temporary restraining order and preliminary injunction in the United States District Court for the District of New Jersey seeking to prevent Defendants from hosting an independence day soccer game between Mighty Barrolle and Invincible Eleven on July 24, 2010.  *See Barrolle Sports Ass'n v. Barrolle Sports Ass'n, Trenton Chapter*, No. 10-3682 (D.N.J. July 22, 2010).  Judge Pisano refused to grant the requested relief and the motion was denied.

Barrolle testified at our July 21, 2011 hearing that although his motion was denied in

2010, the judge ordered the parties to return to court after the game so that the trademark issues could be resolved once and for all.  Barrolle advised, however, that no resolution was ever reached because some of the defendants agreed to return to Barrolle Sports Association after the 2010 game.  (Hr'g Tr. 31-33.)  Plaintiffs submitted a Memorandum of Understanding signed by Moses Tarr, a defendant in the 2010 litigation, and Charles Roberts, Jr., president of the Trenton chapter, which states that the Mighty Barrolle Sports Association and the New Jersey chapter of the Union of Mighty Barrolle have agreed to merge into a single body.  (Hr'g Ex. P-5.)  Barrolle stated that the individual Defendants in this litigation did not agree to return to his organization.[1] (Hr'g Tr. 32-33.)

Herbert Cooper, chairman of the Liberian Sports Association of Pennsylvania, testified for Defendants.  He advised that in August 2002, he registered the trademarks "Invincible Eleven" and "Mighty Barrolle" with the Commonwealth of Pennsylvania.  (Hr'g Ex. D-1.) Plaintiffs' counsel argued, however, that this document was simply an application for a trademark, not a registration.  No additional evidence was offered with regard to the present status of the trademarks.  Cooper advised that the Invincible Eleven and Mighty Barrolle have played games in Pennsylvania under the auspices of his organization since 2002.  (Hr'g Tr. 38.) On June 3, 2011, Cooper filed a lawsuit against Plaintiffs in the Court of Common Pleas Delaware County alleging that Plaintiffs were infringing his trademarks.  (*Id.* at 40, 48.)  This state-court action sought to prohibit Plaintiffs from hosting their soccer game on July 23, 2011, at Bensalem High School.  That lawsuit was stayed pending the outcome of this lawsuit, which was not filed until Monday, July 18, 2011.  (*Id.* at 47.)  Cooper testified that he attempted, without

---

[1] Evidently, the parties here chose not to return to Judge Pisano.

success, to stop Plaintiffs' soccer game last year by sending them a cease-and-desist letter.  (*Id.* at 41-43.)  During cross-examination, Cooper conceded that the Invincible Eleven existed as a soccer team before he received his Pennsylvania trademarks.  (*Id.* at 45.)

D. Zeogar Wilson, former president of the Mighty Barrolle Sports Association of Trenton, testified for Defendants.  He testified that his organization has hosted soccer games between Might Barrolle and Invincible Eleven since 1991.  (*Id.* at 50-51.)  He stated that Mighty Barrolle of Trenton has been registered since 1995 and that this entity is the earliest legally registered organization of Mighty Barrolle in the United States.  (*Id.* at 50.)  He further testified that he believes the state trademarks predate the federal trademarks.  On cross-examination, Wilson stated that he has only lived in the United States since 2000.

## II.    DISCUSSION

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances."  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  A party seeking a preliminary injunction must show:  (1) likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  *See Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

To prevail on a trademark infringement or unfair competition claim, a plaintiff must prove that (1) it owns the mark, (2) the mark is valid and legally protectable, and (3) the use of the mark to identify goods or services is likely to create confusion.  *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001); *see World Entm't, Inc. v. Brown*, No. 09-5365, 2011 WL 2036686, at *2 (E.D. Pa. May 20, 2011) ("The test for common

5

law trademark infringement and unfair competition is essentially the same as the test for

infringement and unfair competition under the Lanham Act.").

If a mark is federally registered and has become "incontestable" pursuant to 15 U.S.C. §§

1058 and 1065, ownership, validity, and legal protectability are proved. *Ford Motor Co. v.*

*Summer Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). A mark becomes incontestable

after it is continuously used in commerce for five years after registration. *See* 15 U.S.C. § 1065.

However, a mark is not incontestable to the extent that "the use of a mark registered on the

principal register infringes a valid right acquired under the law of any State." *Id.* If a mark is not

incontestable, registration of a mark constitutes prima facie evidence of ownership, validity, and

protectibility. *See Members First Fed. Credit Union v. Members 1ˢᵗ Fed. Credit Union*, 54 F.

Supp. 2d 393, 407 (M.D. Pa. 1999). A party may rebut the prima facie evidence by proving "any

legal or equitable defense or defect . . . which might have been asserted if such mark had not

been registered." *See* 15 U.S.C. § 1115(a); *Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402,

433 (E.D. Pa. 2009). "Neither application for nor registration of a mark at the federal level wipes

out the prior nonregistered common law rights of others." *Warren Publ'g*, 645 F. Supp. 2d at

433 (citations omitted).

Ownership of a trademark results from use, not registration. *A & H Sportswear Co. v.*

*Victoria's Secret Stores, Inc.*, 967 F. Supp. 1457, 1475 (E.D. Pa. 1997). A party establishes

ownership of a mark by being the first to use the mark in commerce. *Lucent Info. Mgmt., Inc. v.*

*Lucent Techs., Inc.*, 186 F.3d 311, 319 (3d Cir. 1999); *Gemmer v. Surrey Servs. For Seniors,*

*Inc.*, No. 10-810, 2010 WL 5129241, at *14 (E.D. Pa. Dec. 13, 2010). Similarly, with respect to

the ownership of unregistered marks, "the first party to adopt a trademark can assert ownership

6

rights, provided it continuously uses it in commerce." *Ford Motor*, 930 F.2d at 292 (citing

cases).

We are compelled to deny Plaintiff's Motion for Preliminary Injunction and Restraining

Order.  As a threshold matter, Plaintiffs have not established incontestability.[2]  Plaintiffs have not

demonstrated that their federal trademarks do not infringe a valid right acquired under state law.

*See* 15 U.S.C. § 1065.  Plaintiffs hold federal trademarks for "Barrolle Sports Association" and

"Invincible Eleven," which were filed in 2003 and 2004, respectively, and registered in 2005 and

2006, respectively.  Defendants argue that they are the registered Pennsylvania trademark holders

of "Invincible Eleven" and "Mighty Barrolle."  Defendants submitted an application for these

trademarks which dated August 29, 2002.  Wilson testified that Defendants owned the state-

registered marks, and Cooper filed a lawsuit against Plaintiffs in state court alleging infringement

of his trademarks.

Plaintiffs argue for protection of their federal trademark, "Invincible Eleven," under the

Lanham Act.  They also argue that they are entitled to enforce their common-law trademark,

"Mighty Barrolle."  Under both theories, before we may grant injunctive relief, we must be

satisfied that Plaintiffs are likely to demonstrate that they were the first to assert ownership rights

in the trademarks and have continuously used the marks in commerce.  Plaintiffs have failed to

carry their heavy burden.  Plaintiffs offered the testimony of Barrolle and Trinity, neither of

whom provided a clear narrative as to the nature of Plaintiffs' use of the marks.  Barrolle testified

that Plaintiffs have been using the marks in America since 1982, but he did not advise that any

soccer games between Mighty Barrolle and Invincible Eleven occurred before 2000.  Trinity

---

[2] We address this issue even though Plaintiffs never raise this argument.

stated that the Union of Invincible Eleven was conceived in 1996, but the federally-registered mark notes that "Invincible Eleven" was first used in commerce on April 10, 2004.  (Compl. Ex. D.)  Defendants presented a different picture of the origins and use of the marks.  Cooper testified that his organization, the Liberian Sports Association of Pennsylvania, filed for the Invincible Eleven and Mighty Barrolle trademarks in 2002, and has hosted games between the two teams since 2002.  Cooper has attempted to restrain Plaintiffs' independence day soccer game for the last two years.  Wilson advised that the Mighty Barrolle Sports Association of Trenton, which was registered in 1995, has been hosting soccer games since 1991.

The conflicting testimony and evidence reveals a factual record that is far from clear. Plaintiffs have not demonstrated the likelihood of success at trial.  Where Plaintiffs seek to enjoin a game that is scheduled to be played just two days after their requested hearing date, and present only a general account as to their ownership and use of particular trademarks, we are not inclined to grant the "extraordinary remedy" of a preliminary injunction.  There is no compelling reason for the delay in commencing this litigation.  Plaintiffs and Defendants have been fighting over the hosting of soccer games between the Invincible Eleven and Mighty Barrolle to celebrate Liberia's independence day for several years.  Barrolle sent Defendants a cease-and-desist letter in April 2011, and Barrolle stated at the hearing that he learned about Defendants' game this year in April, May or June.  (Hr'g Tr. 34.)  Defendants sent a cease-and-desist letter to Plaintiffs this year.  (*Id.* at 43.)  In June they actually filed a lawsuit in Delaware County to resolve this ongoing issue.  For some reason the parties agreed that that lawsuit would be stayed pending the outcome of this lawsuit that was not filed until July 18, 2011, just five days before the game.  As a result of the compressed schedule, the time for hearing this matter was limited and the presentation of

8

evidence did not clarify the issues.

The burden lies with Plaintiffs to establish every element of the preliminary injunction standard.  *See P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).  Plaintiffs have failed to demonstrate the likelihood of success on the merits.  Accordingly, we must deny their Motion.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion will be denied.

An appropriate Order follows.

**BY THE COURT:**

/**s**/ *R. Barclay Surrick*
**U.S. District Judge**